David S. Casey, Jr., (060768)
*dcasey@cglaw.com*
Frederick Schenk, (086392)
*fschenk@cglaw.com*
Gayle M. Blatt, (122048)
*gmb@cglaw.com*
Samantha Kaplan, (336048)
*skaplan@cglaw.com*
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

Stephen J. Herman (*pro hac vice forthcoming*)
*sherman@hhklawfirm.com*
**HERMAN HERMAN KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Telephone: (504) 581-4892
Facsimile: (504) 569-6024

*Attorneys for Plaintiff James Whelan*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| JAMES WHELAN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>AMPLIFY ENERGY CORPORATION, a Delaware corporation, BETA OPERATING COMPANY LLC d/b/a BETA OFFSHORE, a Delaware LLC, and SAN PEDRO BAY PIPELINE CO., a California corporation,<br><br>        Defendants. | CASE NO. 8:21-cv-1706<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff James Whelan ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendants Amplify Energy Corporation ("Amplify"), Beta Operating Company, LLC ("Beta") and San Pedro Bay Pipeline Co. ("San Pedro"), for damages, injunctive relief, and other equitable relief. Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief and the investigation of undersigned counsel as to all other matters. Plaintiff requests a trial by jury for all claims triable.

## INTRODUCTION

1.      On or around October 1, 2021, a ruptured pipeline ("the Pipeline") off the coast of Huntington Beach began to leak tens of thousands of gallons of toxic crude oil into the Pacific Ocean. The leak was not detected, however, until October 2, 2021, by which point a 13-square-mile slick had already begun to form.

2.      In the morning of October 2, 2021, the smell of diesel and tar lingered in the air as clumps of crude oil washed ashore. The crude brought along with it dead birds and fish.

3.      For unknown reasons, it took Defendants, who have a long history of environmental violations, hours to shut off the Pipeline even though they knew or should have known about the ruptured Pipeline long before they notified the Coast Guard of the leak. At that point, the damage was done.

4.      The Orange County healthcare agency released a statement to citizens of the affected area warning of the deleterious effects of the oil spill on human health and safety.

5.      This unfortunately familiar story could have been avoided. Because of the enormous risks involved in operating oil rigs and pipelines, corporations engaged in this business bear a responsibility to take all

1

necessary measures to put systems into place that avert the risk and promptly mitigate any harm should a spill occur. Here, Defendants did not live up to their responsibilities. They not only allowed their Pipeline to rupture, but they also failed to detect the leak in time to mitigate the harm done to the surrounding people, environment, and defenseless animals who have suffered from all the damage that has flowed from the ruptured Pipeline.

6.     Accordingly, Plaintiff brings this class action individually and on behalf of all others similarly situated to redress the harms caused by Defendants' oil spill.

## THE PARTIES

7.     Plaintiff Whelan is a resident of Huntington Beach, California where he provides individual and group surf lessons. Since 2018, Plaintiff Whelan has been a host with Airbnb Experiences, which involves Airbnb guests booking surf lessons with him. Plaintiff Whelan's clients also include local residents who do not book through Airbnb.

8.     Plaintiff Whelan's business is dependent on access to and use of the beach and ocean. Since the oil spill and beach closure, Plaintiff Whelan has had to cancel surf lessons, causing him a loss of income.

9.     As a resident of Huntington Beach, Plaintiff will likely be exposed to toxins as a result of Defendants' conduct.

10.     Defendant Amplify Energy Corporation is a Delaware corporation with its principal place of business located in Houston, Texas.

11.     Defendant Beta Operating Company, LLC, d/b/a Beta Offshore, a subsidiary of Amplify, is a Delaware LLC, with its principal place of business located in Houston, Texas. Beta operates the Elly oil processing platform located above the Beta Field oil reserve.

12.     Defendant San Pedro Bay Pipeline Co. is a California

corporation with its principal place of business in California. San Pedro is also a subsidiary of Defendant Amplify.

## JURISDICTION AND VENUE

13.    Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, at least one Class member is a citizen of a state different from that of Defendant, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

14.    Additionally, this Court has federal question jurisdiction under the Outer Shelf Continental Lands Act, 43 U.S.C. § 1331 *et seq.*, and the Federal Oil Pollution Act of 1990.

15.    This Court has personal jurisdiction over Defendants because they are registered to conduct business in California, and have sufficient minimum contacts with California.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District.

## FACTUAL ALLEGATIONS

**A.    The Elly Oil Rig and Pipeline**

17.    Elly is an oil processing platform that was installed and began operating atop the Beta Field oil reserve in 1980.

18.    Elly receives oil via pipeline from nearby oil wells and separates the oil from the water (thus creating crude oil). It then transports crude oil from the Beta Field through the Pipeline to a pump station in Long Beach, California, where the oil is delivered to an oil refinery.

19.    The Pipeline, nearly 18 miles long, was installed in 1980. The Pipeline has a 16-inch nominal diameter with 0.500-inch wall thickness for

the offshore portion and 0.375-inch wall thickness for the onshore portion. According to Defendants' Oil Spill Prevention and Response Plan, the Pipeline was transporting roughly 4,000 barrels of oil per day, at pressures ranging between 250 and 720 psi.

20. With one barrel of oil equal to 42 gallons, the Pipeline pumps around 168,000 gallons of oil each day when functioning properly.

**B.     The Spill and Response**

21. Huntington Beach residents were the first to report odors in the air related to the spill in the evening of Friday, October 1, 2021.

22. That same evening, the California Governor's Office of Emergency Services began receiving reports of oil in the water off the coast of Huntington Beach.

23. At approximately 02:30 PDT on October 2, 2021, Defendants' control room personnel received a low-pressure alarm on the Pipeline, indicating a possible failure. This was confirmed according to the Corrective Action Order (CAO) issued by the Pipeline and Hazardous Materials Safety Administration (PHMSA), Office of Pipeline Safety (POS).

24. Despite the alarm sounding at 2:30 PDT, Defendants did not notify the U.S. Coast Guard National Response Center until 6:01 PDT. This failure to notify in a prompt manner resulted in the uncontrolled release of crude oil into the ocean for hours longer than it should have.

25. At 09:07 a.m. on October 2, 2021, more than six hours after the initial alarm, and three hours after Defendants shut down the Pipeline, Defendants reported the incident to the National Response Center ("NRC"), indicating that there was a release of crude oil in the vicinity of its pipeline near Platform Elly.

26. The U.S. Coast Guard subsequently submitted NRC reports reporting the presence of oiled marine life and dead fish, and reporting that

4

the failure may have been caused by a crack in the Pipeline.

27.    Although the exact location of the failure is presently unknown, preliminary reports indicate it is approximately 5 miles offshore at a depth of approximately 98 feet.

28.    On October 6, 2021, Defendants' CEO, Martyn Willsher stated that a 4,000 ft section of the pipeline appears to have a 13-inch split along the length of the pipe.1

29.    Various state and federal agencies responded to the scene, including the U.S. Coast Guard, BSEE, NTSB, PHMSA, CDFW, and local law enforcement. Private oil spill response organizations under contract with Defendants also responded to the scene.

30.    Notwithstanding continued investigation into the timeline and circumstances of events related to the spill, all evidence gathered to date shows Defendants did not promptly react to, or respond to, signs of the Pipeline's failure or notify the relevant government agencies.

31.    Defendants' failure to promptly react to or respond to the ruptured Pipeline allowed over 144,000 gallons of heavy crude oil to gush into the Pacific Ocean, prompting initial coastal and fishing closures from Huntington Beach all the way south to the San Diego County line.

32.    As of the time of filing this Complaint, the oil slick caused by the spill spans about 8,320 acres – larger than the size of Santa Monica.

33.    Defendants knew or should have known immediately that oil was leaking from the ruptured Pipeline because gauges that monitor the pressure in the Pipeline should have alerted officials. However, Defendants' CEO Martyn Willsher said in a news conference that Amplify was not

---

1 https://losangeles.cbslocal.com/2021/10/06/huntington-beach-oil-spill-section-pipeline-damaged-moved-100-feet-along-ocean-floor/

aware of the spill until Saturday, October 2, 2021.

34.     According to Defendants' own Oil Spill Response and Prevention plan, the Pipeline would be "capable of causing significant and substantial harm to the environment in the event of a discharge of oil because of its proximity to navigable waters and adjoining shoreline areas designated as environmentally sensitive by the [Area Contingency Plan]."

35.     As of the time of filing this Complaint, the Coast Guard announced that the Pipeline was likely struck by an anchor from a large commercial ship several months to a year prior to the spill. However, because of marine growth that was spotted on the pipe in an underwater survey, the Coast Guard has indicated this did not necessarily cause the slender crack from which the oil spilled.

36.     Regardless of the exact cause of the spill, Defendants displayed a complete failure in detection, notification, and response. According to Defendants' own Oil Spill Prevention and Response Plan, the Pipeline is continuously monitored by an "automated leak detection system" which includes automated monitoring and reporting to Elly, whose control room is staffed at all times, and leak detection surveillance.

37.     Elly is also connected to an Emergency Shutdown System ("ESD"). The ESD is supposed to shut down the flow of oil from the wells into the Pipeline within one minute. Elly has both automatic ESDs in the control room as well as manual ESDs, which consist of large red pull knobs, strategically located throughout the platform.

38.     Despite the existence of these extensive emergency backstops, Defendants have made no mention of their use in stopping the spill, which went on uncontrolled for hours.

## C.     Defendants' History of Compliance Violations

39.     While this oil spill is catastrophic, it was no accident.

Defendants have a history of compliance violations relating to other spills.

40.     Between 2013 and 2014, federal regulators fined Beta a total of $85,000 for violations that, in two instances, led to injuries of workers. Since 2010, Beta has also been issued over 100 noncompliance violations by federal inspectors, according to a database maintained by the federal Bureau of Safety and Environmental Enforcement, which operates under the U.S. Department of the Interior and is responsible for inspecting offshore oil platforms.

41.     Defendants have profited and continue to profit from their failure to comply with safety requirements and guidelines, and their decision not to maintain, repair and/or replace the Pipeline, or keep it safe from harm's way, demonstrates Defendants' willingness to prioritize profits of over public safety.

42.     Defendants knew of the extremely high risk of catastrophic injury inherent in the transportation of oil through a pipeline. Defendants avoided taking action to protect Plaintiff and the Class from apparent risks the Pipeline presented. Defendants demonstrated a callous and reckless disregard for human life, health, and safety by operating the Pipeline without proper maintenance and safety equipment.

43.     This disregard for the rights of others and the rule of law is part of a pattern and practice that Defendants have demonstrated. Defendants acted with such indifference to the consequences of their misconduct, with such recklessness, and as part of a well-established pattern, as to be willful, malicious, and oppressive, and in disregard of the rights of the Plaintiff and the Class, thereby meriting an award of punitive and/or exemplary damages against Defendants.

44.     In short, Defendants operated a pipeline that failed. The communities through which it transports oil, and most particularly the

beachfront property owners and renters, suffer the consequences.

45.     This lawsuit therefore seeks to compensate the victims of the spill and to ensure that Defendants are prevented from causing additional damage to the state economy, the environment, and real property residents in the future.

**D.     Impacts on the Environment and Surrounding Communities**

46.     The Orange County Coast is a special place with blue water, iconic piers, famous surf breaks, and beautiful beaches.

47.     Now, contamination by Defendants' oil spill has undermined the health of the environment, and the coastal beachfront property.

48.     Much of the economic life in this region revolves around the coastal areas and beaches. Thousands of people in Orange County depend on the ocean and beaches for work and play. Beachfront property owners enjoy direct access to blue waters and magnificent coastline, and residents walk the beaches, fish from the shores, swim, surf, kayak and use and enjoy their properties.

49.     The City of Huntington Beach was forced to cancel the Pacific Airshow, one of the largest airshows in the United States, which was expecting about 1.5 million attendees. Marine life and birds are washing ashore dead or covered in oil. Beachgoers and residents have reported breathing in fumes from the oil. Businesses are forced to close and are losing business. Huntington Beach, self-titled "Surf City USA," and home to countless professional and amateur surfers, has been forced to close beaches, expelling its rich surf community indefinitely.

## CLASS ALLEGATIONS

50.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed Nationwide Class, defined as follows:

> All persons and entities who have suffered or are suffering economic and/or business losses as a result of the Elly oil rig breach that occurred on or about October 1, 2021.

51.     Excluded from the proposed Class are any officer or director of Defendants; any officer or director of any affiliate, parent, or subsidiary of Defendants; anyone employed by counsel in this action; and any judge to whom this case is assigned, his or her spouse, and members of the judge's staff.

52.     **Ascertainability**. The membership of the class can be readily ascertained because the oil spill was a specific catastrophic event, the consequences of which can be seen physically and traced to crude oil washing onto beaches. Those whose businesses or properties were affected by the spill and its ongoing effects are aware of the facts and the resulting costs therefrom.

53.     **Numerosity.** Members of the proposed class likely number in the thousands and are thus too numerous to practically join in a single action.

54.     **Commonality and Predominance.** Common questions of law and fact exist as to all proposed Class members and predominate over questions affecting only individual Class members. These common questions include, but are not limited to, the following:

   a.  Whether Defendants engaged in the wrongful conduct alleged herein;

   b.  Whether Defendants negligently, recklessly, willfully and/or wantonly failed to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters off the coast of Huntington Beach and to prevent injuring Plaintiff and the Class members;

9

c. Whether Defendants owed a legal duty to Plaintiff and the Class members to exercise due care in installing and maintaining safety measures and other systems on the Pipeline to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters off the coast of Huntington Beach;

d. Whether Defendant negligently or recklessly breached legal duties owed to Plaintiff and the Class members to exercise due care in installing and maintaining safety measures and other systems on the Pipeline to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters off the coast of Huntington Beach;

e. Whether Defendants' breach of any legal duties owed was a substantial factor in causing harm to Plaintiff and the Class members;

f. Whether Defendants knowingly, intentionally or negligently suppressed, concealed, omitted or delayed relaying material facts regarding the crude oil spill to local, state and federal authorities, thereby slowing the response and/or increasing the damages to Plaintiff and the Class members;

g. Whether Plaintiff and the other class members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

h. Whether Plaintiff and the other class members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

55.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Similar or identical statutory and

common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous questions that dominate this action.

56.   **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. All Class members were damaged by the oil spill and suffered similar categories of damages. Defendant's misconduct impacted all Class members in the same manner.

57.   **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

58.   **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

11

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Negligence**

59.    Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

60.    At all times relevant, Defendants owned, operated, and/or managed Elly and the Pipeline.

61.    As owners, operators, and/or managers of Elly and the Pipeline, Defendants owe and owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the design, operation, construction, and/or maintenance of all operations and equipment pertaining to the Pipeline and Elly. This duty includes, among other things, designing, constructing, operating, and/or maintaining all operations and equipment in a manner so as to ensure the reasonable use and enjoyment of the nearby beach communities and surrounding areas, and to comply with relevant regulations and industry standards.

62.    Defendants, as owners, operators, and/or managers of Elly and the Pipeline, breached the duty owed to Plaintiff and the Class by negligently designing, constructing, operating, and maintaining Elly and the Pipeline; failing to conduct reasonable safety and leak inspections; failing to implement reasonable practices to detect and prevent spills; and failing to promptly contain and mitigate the effects of the spill. These breaches caused foreseeable harm to Plaintiff and Class members, whose businesses and/or properties were damaged as a result of the spill caused by Defendants.

63.    In doing so, Defendants violated local, state, and federal law that require Defendants to operate the Pipeline in a manner that does not damage public health or safety, or pose a threat to private property. These

laws include, among others, Cal. Health & Safety Code § 25510(a) (requiring handlers of hazardous material to immediately report the release or threatened release thereof to the unified program agency, and Cal. Gov. Code § 8670.56.5 (imposing liability for any damages or injury resulting from an oil spill), the Lempert-Keene Act, Government Code Section 8670, et seq., the Porter Cologne Act, Water Code Sections 13000, et seq., Cal. Fish & Game Code Section 5650, et seq., the Federal Clean Water Act, 33 U.S.C. § 1251 et seq., and state and federal spill response and notification laws.

64.     Defendants' violations of the above-cited statutes, ordinances, and/or regulations resulted in precisely the type of harm to Plaintiff and Class members that such laws were designed to prevent, and Plaintiff and Class members are those for whose protection said laws were adopted.

65.     Defendants knew, or should have known, that the failure to adequately design, construct, operate, and/or maintain the Pipeline and Elly could result in the spill, and that the foregoing could and would cause significant economic harm to businesses and property in the surrounding communities.

66.     As a result of Defendants' negligence, Plaintiff and Class members have been unable to conduct business in the affected and surrounding areas or have seen a significant decrease in business transactions which originate in the affected areas. As a result, Plaintiff and the Class have suffered a variety of economic injuries including lost revenues and profits, lost business opportunities, and diminution in value of business assets, among others.

## SECOND CAUSE OF ACTION

### Strict Liability for Ultrahazardous Activities

67.     Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

13

68.     At all times herein, Defendants were the owners and operators of the Pipeline and Elly.

69.     At all times relevant to this action, Defendants had supervision, custody, and control of the Pipeline and Elly.

70.     At all times relevant to this action, Defendants were under a continuing duty to protect the Plaintiff and Class members from the harm caused by the Pipeline rupturing.

71.     Defendants were engaged in an ultrahazardous activity by transporting hazardous, flammable, and toxic crude oil through the Pipeline.

72.     Plaintiff and Class members have suffered harm as a result of the spill of toxic crude oil from Defendants' Pipeline, including disruption of their business, inconvenience, loss of business opportunities, lost profits, lost earnings, lost earning capacity, loss of business reputation, and other expenses.

73.     The injuries sustained by Plaintiff and Class members as a result of the oil spill were the direct and proximate result of Defendants' activities.

74.     The harm to Plaintiff and the Class was and is the kind of harm that would be reasonably anticipated as a result of the risks created by transporting hazardous, flammable, and toxic crude oil through the Pipeline, which was not safely or properly maintained in such close proximity to the Huntington Beach shoreline.

75.     Defendants' operation of the Pipeline and the Pipeline's rupture was a substantial factor in causing the harms suffered by Plaintiff and Class members.

76.     Defendants' actions were directly contrary to California and United States policy to preserve and protect the environment.

77.     Defendants are liable to Plaintiff and Class Members for all

1   damages arising from this ultrahazardous activity, including all

2   compensatory damages, and punitive damages pursuant to Cal Civ. Code

3   § 3294, and attorney's fees pursuant to Cal Civ. Code § 1021.5.

4         78.    Due to Defendants' strict liability, Plaintiff and Class members

5   are entitled to recover actual damages.

6         79.    The acts and omissions of Defendants were conducted with

7   malice, fraud, and/or oppression as set out in this Complaint.

8   **THIRD CAUSE OF ACTION**

9   **Public Nuisance**

10        80.    Plaintiff incorporates by reference all previous allegations as

11  though fully set forth herein.

12        81.    As a result of the oil spill and Defendants' negligent operation

13  of the Pipeline, Defendants have created a condition that is harmful to

14  health and interferes with the comfortable enjoyment of life and property.

15  As a result of Defendants' actions and inactions, Plaintiff and Class

16  members have suffered a permanent loss of use and enjoyment of their

17  property.

18        82.    Defendants' operation of the Pipeline is a condition that would

19  reasonably annoy and disturb an ordinary person, as shown, for example,

20  by the major event cancellations, business closures, community outrage in

21  response to the spill, the health impacts warned of by the County, and the

22  nationwide interest in the impact of the Spill on the environment.

23        83.    The seriousness and gravity of the harm associated with the

24  spill and continued operation of the Pipeline outweigh the public benefit of

25  Defendants' conduct. There is no social utility associated with the release of

26  tens of thousands of gallons of crude oil into the Pacific Ocean and nearby

27  coastal communities.

28        84.    The contamination described herein constitutes a nuisance

15

1   within the meaning of Cal. Civil Code Section 3479.

2        85.   Plaintiff and Class members are informed and believe, and

3   thereon allege, that the referenced nuisance is permanent and unable to be

4   abated.

5        86.   Plaintiff and Class members suffered and continue to suffer

6   harm and injury to their economic livelihood, to which they did not consent

7   and which is different from the type of harm suffered by the general public.

8   Plaintiff and Class members also continue to suffer harm and injury to their

9   property, to which they did not consent and which is different from the

10  type of harm suffered by the general public.

11       87.   To remedy the harm caused by Defendants' nuisance, Plaintiff

12  and Class members seek public injunctive relief, including, but not limited

13  to, an order requiring Defendants to do the following: restore the affected

14  real properties and beaches; repair reputational damage done to coastal

15  property values; and prevent Defendants from operating the Pipeline

16  without adequate safety mechanisms and ongoing monitoring so as to

17  ensure that no future spill occurs and to prevent Defendants from operating

18  the Pipeline if they are unable to ensure that such safety mechanisms and

19  monitoring will prevent any future spills.

20       88.   By continuing this nuisance, Defendants are acting with the full

21  knowledge of the consequences and damages that are being caused by said

22  nuisance.

23       89.   Defendants' acts and omissions relating to the spill were done

24  with malice, fraud, and/or oppression, as described herein.

### FOURTH CAUSE OF ACTION

### Negligent Interference with Prospective Economic Advantage

27       90.   Plaintiff incorporates by reference all previous allegations as

28  though fully set forth herein.

91.    Plaintiff and Class members have existing or prospective economic relationships with citizens of Southern California, visitors to Orange County, and other individuals and organizations doing business in and related to Orange County.

92.    These relationships have a reasonably probable likelihood of resulting in future economic benefits or advantages to Plaintiff and Class members.

93.    Defendants knew or should have known of these existing and prospective economic relationships.

94.    Defendants owed a duty to Plaintiff and Class members to avoid negligent or reckless conduct that would interfere with and adversely affect the existing and prospective economic relationships of Plaintiff and Class members.

95.    Defendants breached that duty to Plaintiff and Class members by, among other things, failing to install and/or maintain reasonable safety equipment to prevent a major oil spill, failing properly to maintain the Pipeline in a safe condition, and failing to promptly respond to, contain, and mitigate the effects of the spill.

96.    Defendants knew or should have known that if they failed to act with reasonable care, the existing and prospective economic relationships of Plaintiff and Class members would be interfered with and disrupted.

97.    Defendants were negligent and failed to act with reasonable care as set forth above.

98.    Defendants engaged in wrongful acts and/or omissions as set forth above, including but not limited to their violations of federal, state, and local laws that require Defendants to operate the Pipeline in a manner that does not damage public health and safety.

99.    As a direct and proximate result of Defendants wrongful acts

17

and/or omissions, Defendants negligently and recklessly interfered with and disrupted the existing and prospective economic relationships of Plaintiff and Class members.

100.   As a direct and proximate result of Defendants' wrongful acts and/or omissions, Plaintiff and Class members have suffered and will suffer economic harm, injury, and losses as herein set forth above.

**FIFTH CAUSE OF ACTION**

**Violations of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

101.   Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

102.   Defendants violated and continue to violate California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., which prohibits unlawful, unfair, and/or fraudulent business acts or practices.

103.   Defendants' conduct, as alleged above, constitutes unlawful and unfair business practices within the meaning of the UCL.

104.   Defendants' conduct amounts to unlawful conduct because their conduct constitutes common law negligence, trespass, and nuisance, and they violated Civ. Code § 3479 (prohibiting obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property), Cal. Health & Safety Code § 25510(a) (requiring handlers of hazardous material to immediately report the release or threatened release thereof to the unified program agency), and California Government Code section 8670.56.5 (imposing liability for any damages or injury resulting from an oil spill)

105.   Defendants' conduct amounts to "unfair" business practices because the policies underlying the statutes and the common law are implicated by Defendants' misconduct. Defendants' practices offend

established public policies, are dishonest, unfair, and do not comport with standards of care embodied in various statutes and common laws, including negligence. The impact of Defendants' practices on Plaintiff and the Class Members, and the environment has been sustained and substantial, and is in no way mitigated by any justifications, reason, or motives. Defendants' conduct relating to the Spill has no utility when compared to the harm done to Plaintiff and members of the Class.

106.   As a direct and proximate result of Defendants' unfair and unlawful methods of competition, acts or practices, Plaintiff and Class Members have sustained injury to property and are entitled to restitution and injunctive relief pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an order:

A.    Certifying the proposed Class as requested herein;

B.    Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

C.    Finding that Defendants engaged in the unlawful conduct as alleged herein;

D.    Enjoining Defendants from operating the Pipeline without adequate safety and response measures and ongoing monitoring to ensure there will not be another spill;

E.    Awarding Plaintiff and Class members damages;

F.    Awarding Plaintiff and the Class members equitable relief, including restitution and disgorgement;

G.    Awarding Plaintiff and Class members pre-judgment and post-judgment interest on all amounts awarded;

H.    Awarding Plaintiff and the Class members reasonable attorneys'

fees, costs, and expenses; and

I.     Granting such other relief as the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the proposed Class, hereby demands a trial by jury as to all matters so triable.

Date:  October 13, 2021          Respectfully submitted,

 *s/ David S. Casey, Jr.*
David S. Casey, Jr., (060768)
*dcasey@cglaw.com*
Frederick Schenk, (086392)
*fschenk@cglaw.com*
Gayle M. Blatt, (122048)
*gmb@cglaw.com*
Samantha Kaplan, (336048)
*skaplan@cglaw.com*
**CASEY GERRY SCHENK**
  **FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone:   (619) 238-1811
Facsimile:    (619) 544-9232

Stephen J. Herman (*pro hac vice forthcoming*)
*sherman@hhklawfirm.com*
**HERMAN HERMAN KATZ**
**& COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, LA  70113
Telephone:   (504) 581-4892
Facsimile:    (504) 569-6024

*Attorneys for Plaintiff James Whelan*

20